```
                 IN THE UNITED STATES DISTRICT COURT
                 IN AND FOR THE DISTRICT OF DELAWARE
                                - - -

   DAKO DENMARK A/S and DAKO          )      Civil Action
   NORTH AMERICA, INC.,               )
                                      )
              Plaintiffs,             )
                                      )
         v.                           )
                                      )
   LEICA MICROSYSTEMS, INC. and       )
   LEICA MICROSYSTEMS GmbH,           )
                                      )
              Defendants.             )      11-390-GMS

                                - - -
                         Wilmington, Delaware
                        Friday, October 7, 2011
                              10:15 a.m.
                         Telephone Conference
                                - - -

   BEFORE:   HONORABLE GREGORY M. SLEET, Chief Judge

   APPEARANCES:

             RICHARD L. HORWITZ, ESQ.
             Potter Anderson & Corroon LLP
                     -and-
             CHRISTINE E. LEHMAN, ESQ., and
             P. ANDREW RILEY, ESQ.
             Finnegan, Henderson, Farabow Garrett & Dunner LLP
             (Washington, D.C.)

                              Counsel for Plaintiffs

             FREDERICK L. COTTRELL, III, ESQ., and
             ANNE SHEA GAZA, ESQ.
             Richards, Layton & Finger
                     -and-
             WAYNE L. STONER, ESQ., and
             DAVID L. CAVANAUGH, ESQ.
             Wilmer Cutler Pickering Hale and Dorr LLP
             (Boston, MA)

                              Counsel for Defendants
```

```
 1                THE COURT:  Good morning, counsel.  Counsel, who
 2    is appearing for the plaintiff?
 3                MR. HORWITZ:  Good morning, Your Honor.  It's
 4    Rich Horwitz from Potter Anderson.  I am going to put my
 5    phone on mute because I am in a place where there is some
 6    noise.  And I will let my co-counsel introduce themselves,
 7    if that is okay with Your Honor.
 8                THE COURT:  Thanks, Mr. Horwitz.
 9                MS. LEHMAN:  Chris Lehman and Andrew Riley from
10    Finnegan Henderson for the plaintiff Dako.
11                THE COURT:  Good morning.
12                Continuing along...
13                MR. COTTRELL:  Good morning, Your Honor.  Fred
14    Cottrell and Anne Gaza in Wilmington.  We are Delaware
15    counsel for the Leica Microsystem defendants.  On the phone
16    from Wilmer Hale should be Wayne Stoner and David Cavanaugh,
17    and in-house counsel for Leica is Shannon Merkish
18    (phonetic), I believe.
19                MS. MERKISH:  That's correct.
20                THE COURT:  Good morning, all.
21                So, counsel, thanks for the joint status report.
22    I am going to go through this really quick.  I am going to
23    ask plaintiff to prepare the case management order and have
24    it filed by the 17th, please.
25                MS. LEHMAN:  Of course, Your Honor.
```

```
 1                THE COURT:  Everyone is, I am sure, aware of the
 2   joint status report, Page 9, which has the proposed schedule
 3   in it.  Do you have it in front of you?
 4                MR. COTTRELL:  Yes, Your Honor.
 5                THE COURT:  I am going to adopt all of the
 6   dates, with the following exceptions, which were necessarily
 7   left blank.  We are going to have a Markman hearing on May
 8   22 at 9:30 in the morning.  Counsel, how much time do you
 9   think we will need?
10                MS. LEHMAN:  I think about three hours, Your
11   Honor.
12                THE COURT:  What is this, two patents involved?
13                MS. LEHMAN:  Yes.
14                THE COURT:  How many claims are asserted?
15                MS. LEHMAN:  You know, they are overlapping.
16                THE COURT:  How many that we won't need to have
17   duplicative discussions about in Markman?
18                MS. LEHMAN:  I think we are going to be able to
19   limit the claims, the claim terms at issue pretty far,
20   because the two patents, one is a continuation of the other.
21                THE COURT:  You don't think that there are going
22   to be too many terms to construe?
23                MS. LEHMAN:  No, no.  I think we are going to be
24   able to limit the terms.
25                THE COURT:  Do you have a ballpark you have in
```

1   mind?
2           MS. LEHMAN:  For the number of claim terms?
3           THE COURT:  Yes.
4           MS. LEHMAN:  I think we could get it down,
5   definitely between five and ten.
6           THE COURT:  Does the other side concur?
7           MR. STONER:  Your Honor, I expect we will be
8   able to do that.  We haven't been told what claims are
9   asserted yet.  So it's kind of hard to say in the abstract.
10  But we will certainly endeavor to make it less than ten.
11          THE COURT:  We will leave the morning of the
12  22nd, which will approximate three hours.  I hope we can do
13  it in less.
14          Then moving on, should it be necessary, I will
15  convene a teleconference on the 18th of December, 2012, at
16  10:00 o'clock to discuss your letters seeking permission to
17  file, opposing those requests, motions for summary judgment.
18          April 1 close of business will be the due date
19  for the proposed pretrial order.
20          April 22 will be the date for the pretrial
21  conference, commencing at 9:30.
22          This is a jury trial.  Right?
23          MS. LEHMAN:  Yes, Your Honor.
24          THE COURT:  That pretrial conference will occur
25  here in Wilmington.

1                    And this matter will come to trial on May the
2     6th of the year 2013.
3                    Counsel, you stand by your estimate of five
4     days?
5                    MS. LEHMAN:  Yes, Your Honor.
6                    THE COURT:  Other side?
7                    MR. STONER:  Yes.
8                    THE COURT:  Okay.  I am fine with that.
9                    Let's see.  There have been no settlement
10    discussions in this matter?
11                   MS. LEHMAN:  Not since the complaint was filed,
12    Your Honor.  The parties were in licensing negotiations,
13    discussions, prior to the complaint being filed for several
14    months.
15                   THE COURT:  Who was involved?  The
16    businesspeople for the parties?
17                   MS. LEHMAN:  Yes.
18                   THE COURT:  And if you don't mind me asking,
19    what precipitated this lawsuit if they were talking?
20                   MS. LEHMAN:  I think a failure to reach
21    agreement.  They negotiated and there was -- we were asking
22    for a license and Leica was threatening to file a reexam.
23    Talks broke down.  We filed the complaint, and they filed
24    the reexam.
25                   THE COURT:  Leica has filed for reexam.  As I

```
 1   understand it, all of the claims in the two asserted patents
 2   have been rejected by the PTO?  This is an inter partes
 3   reexam.  Is that right?
 4                MS. LEHMAN:  That's right.
 5                THE COURT:  There is a motion to stay extant.
 6   Is that right?
 7                MR. STONER:  That's correct, Your Honor.
 8                THE COURT:  That was filed by Leica.  Right?
 9                MR. STONER:  Correct.
10                THE COURT:  Leica, what is your view of the
11   motion?  Why should I stay this?
12                MR. STONER:  Well, for the usual reasons --
13   first of all, Your Honor is correct that both the patents in
14   suit, all claims stand rejected and there are actually two
15   reexaminations that have been granted on the first patent,
16   the '392 patent.  There are some very distinctive features
17   about this lawsuit, though, that make it particularly
18   suitable for stay pending reexamination.  The first of those
19   is that the patents in suit will both expire in May of next
20   year, in just a few months, which has two consequences.
21   One, that in the reexamination, if there is even an
22   amendment to the claims, then that claim is effectively
23   canceled, because intervening rights would only apply when
24   the reexam certificate issues.  And by that time the patent
25   will have expired.
```

1          So given the statistics that 88 percent of
2     all -- of some claims in inter partes reexamination -- these
3     are inter partes reexams -- will be canceled or modified,
4     there is a very high statistical chance that at least one of
5     the claims in this patent are going to go away.  88 percent
6     cancel statistically.
7          The second reason why a stay would be
8     appropriate, in light of the imminent expiration of these
9     patents, there is no injunctive relief or issue of
10    irreparable harm in this case.  The parties' proposed
11    schedule, which I gather Your Honor is going to adopt, the
12    case won't reach the merits until after the patents have
13    expired.  So there is no possibility of injunctive relief.
14    And there wouldn't have been, anyway.
15         Your Honor asked how this lawsuit came about.
16    These patents were bought by Dako, the plaintiffs, a couple
17    years ago from another company.  And our products have been
18    on the market since 2004.  We knew nothing about these
19    patents.  Then last October we got a letter saying we are
20    offering to license these patents.  This was not a
21    settlement discussion.  This was simply an offer to license.
22    We did proceed to negotiate over the next six months.  But
23    then, unlike another case, which this is distinctive, unlike
24    a lot of cases, we showed, Leica showed Dako the draft
25    reexamination request before litigation even began.  There

1    was no like tactical reaction to a lawsuit following the

2    reexam request.  Then it is Dako, the plaintiffs, that jump

3    to file suit before we can get that on file.  And actually,

4    they were filed the same day.

5              So there is no prejudice to the plaintiffs.  The

6    only issue in this case is money, licensing, royalties.  And

7    whether that is paid in two years, in four years with

8    interest, makes no difference.  And a number of courts have

9    observed that where there is no issue of irreparable harm,

10   it is only money, it makes sense to stay the case until the

11   reexamination is over, particularly when there is a high

12   likelihood that a lot of the issues will go away,

13   particularly since the Court and the parties could waste a

14   whole lot of time and effort on proceedings that will become

15   moot and meaningless if the reexamination results in a

16   cancellation of the claims.

17             So to further promote judicial economy, save

18   both parties costs until the validity of the patent has been

19   determined, and also in light of the Supreme Court's

20   decision in the I4I case just a couple months ago, where

21   they emphasized that Congress has created the inter partes

22   reexamination procedure precisely for the purpose of dealing

23   with bad, invalid patents, and that it is the Patent

24   Office's primary responsibility to deal with that issue, for

25   all of those reasons -- I am sorry for going on so long,

1    Your Honor -- we think it's appropriate the case be stayed
2    pending the reexaminations.
3            THE COURT: That is okay, counsel. That was
4    helpful. If I wanted you to stop, I would have stopped you.
5            What is your estimate as to the anticipated
6    completion date of this reexamination?
7            MR. STONER: Statistically, they take -- and
8    there has been some confusion, I think, in the briefing on
9    this subject -- the Patent Office says the average time for
10   inter partes reexamination to be done is about three years.
11   But that is until the reexamination certificate issues,
12   which doesn't happen until appeals are done. So the
13   three-year period, the average three-year period is
14   including appeals, unlike what I believe Dako said in its
15   brief. Those statistics on which we rely say it's until the
16   reexam certificate issues.
17           The average may be less relevant in this case
18   than the median, which is a bit less than that, 33 months,
19   because it's more reflective of, you know, how most of these
20   things go. Also, its average reflects reexams not in
21   litigation and those in litigation. Of course, the Patent
22   Office says that those where there is a pending litigation,
23   they will try to resolve it quicker than usual.
24           THE COURT: Okay. Let me get a response from
25   Dako.

1            **MS. LEHMAN:  Yes, of course, Your Honor.  Thank**
2     **you.**
3            **We disagree that the statistics -- that it would**
4     **be less than three years.  In fact, I think the latest PTO**
5     **statistics really show that that is just a sampling.  The**
6     **average, the median, and the mean of 36 and 33 months --**
7            **THE COURT:  Regardless of those statistics,**
8     **counsel, why don't you address the first portions of your**
9     **opponent's arguments.**
10           **MS. LEHMAN:  In terms of, statistically, whether**
11    **the claims will be amended or canceled, the amendments of**
12    **the claims is something, of course, that part, at least, is**
13    **under Dako's control as to whether we choose to amend the**
14    **claims.  So since we are in litigation, you know, we do not**
15    **have a current intent of amending the claims, that would**
16    **cause -- and if there were claim amendments, I think at that**
17    **point maybe a motion to stay could be revisited.  But at**
18    **this point we have not amended any of our claims and have no**
19    **intention of doing so.**
20           **THE COURT:  What about the impending expiration**
21    **date of the patent?**
22           **MS. LEHMAN:  Well, Your Honor, we think that, as**
23    **set forth --**
24           **THE COURT:  As it informs the issue of**
25    **irreparable harm.**

1  **MS. LEHMAN:** Right. As we discussed in our
2  opposition to the motion to stay, our situation is that
3  Leica has been coming on strong in the market and taking
4  away market share. And this product is something, once you
5  sell one of these large products, there is a lot of add-on
6  costs. So it sort of becomes, once you get one of their
7  products in the specific hospital, then the accounts become
8  kind of locked up if you buy all of their reagents and you
9  have all these add-on sales. And the gain in market share
10 is greatly hurting Dako.
11         We think a delay is very much going to hurt our
12 clients. We would like to seek resolution as soon as we
13 can.
14         **THE COURT:** That doesn't mean that the harm will
15 be irreparable.
16         **MS. LEHMAN:** That is true. I mean, the patents
17 do expire.
18         **THE COURT:** Here is what I am going to do,
19 counsel. I am going to grant the motion to stay, and
20 encourage you and the other side to get back to the
21 negotiating table.
22         Counsel, you can disregard the earlier portions
23 of this conference. I am going to stay the matter. I will
24 issue just a short order indicating such.
25         I will expect a written report, status report,

```
 1    every -- what would you recommend, counsel for defense, how
 2    often?
 3              MR. STONER:  Many judges ask for every three
 4    months, Your Honor.  If that is too frequent --
 5              THE COURT:  Plaintiff, what do you think about
 6    that?
 7              MS. LEHMAN:  I think that is appropriate, Your
 8    Honor.
 9              THE COURT:  I will look for a jointly written
10    status report every three months.
11              Anything else, counsel?
12              MS. LEHMAN:  No, Your Honor.
13              THE COURT:  Take care.
14              MR. STONER:  Not from the defendants.
15              (Teleconference concluded at 10:49 a.m.)
16
17                         - - -
18    Reporter:  Kevin Maurer
19
20
21
22
23
24
25
```